IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| GREGORY DUBOIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 12-CV-677-JED-PJC |
| THE BOARD OF COUNTY COMMISSIONERS OF MAYES COUNTY, OKLAHOMA; FRANK CANTEY; CHUCK WARD; JEFFERY BARTLETT; CHRIS BUCK; S. BROWN; MITCH GOODMAN; and EMILY GARCIA; | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**I.     Background**

Plaintiff alleges that he was denied necessary medical care for over three months while he was a pretrial detainee in the Mayes County Jail. During that time, he exhibited clear and objective indications of serious physical illness or injury, and his immediate medical needs were reported and obviously apparent, but the defendants were deliberately indifferent in denying him an evaluation by a competent medical professional. Plaintiff alleges that, after 100 days of being held without medical care, he was found in his cell, suffering from abdominal pain, and in visible distress, anxious, hyperventilating, with a distended abdomen. He was finally taken to a nearby medical center, where he was diagnosed with upper gastrointestinal bleeding, a likely perforated ulcer, and hemorrhagic shock.

He was then transferred by Life Flight to Saint Francis Hospital in Tulsa, where he was diagnosed with gastrointestinal bleeding, acute blood loss anemia, free air, free fluid, acute abdominal pain and vascular changes to his right leg, which was discolored, with arterial occlusion. The leg was ultimately amputated as a result of the defendants' deliberate

indifference. Plaintiff alleges that his rights were violated under the federal and State Constitutions.

## II. Dismissal Standards

In considering a Rule 12(b)(6) dismissal motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Rules require "a short and plain statement of the claim to show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The standard does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555-56, 570 (citations omitted). "Asking for plausible grounds ... does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]. A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. at 556. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

*Twombly* articulated the pleading standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded factual allegations of the complaint as true, even if doubtful, and must construe the allegations in the light most favorable to the claimant. *See Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

**III. Discussion**

    **A. Defendants Cantey, Brown, Buck, Ward, and Bartlett**

        **1. Defendants Brown, Buck, Ward, and Bartlett**

Defendants Brown, Buck, and Ward argue that the plaintiff's pleading does not include sufficiently specific allegations of facts against each of them. Specifically, these defendants contend that plaintiff "makes no allegation of wrong doing [sic] committed by [any of these defendants]," and instead "makes generic, vague, and broad assertions that 'defendants' were deliberately indifferent." (Doc. 22 at 1-2). Defendant Bartlett adopted those defendants' motion and thus argues for dismissal on the same grounds. (Doc. 25).

Plaintiff responds that he has plainly alleged constitutional violations for the deliberate indifference of the defendants in refusing him medical care while he was held in the jail. Plaintiff also points out that his pleading was filed in state court, and the Oklahoma state courts have not yet adopted the more exacting *Twombly* and *Iqbal* pleading standards. After *Twombly* and *Iqbal* were decided, the Oklahoma Supreme Court has continued to hold that a pleading "must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts that would entitle [plaintiff to] relief." *Simonson v. Schaefer*, 301 P.3d 413, 414 (Okla. 2013). Because plaintiff's pleading was filed in state court under the less stringent state pleading standard, plaintiff requests that the Court grant leave to amend if plaintiff's allegations are found insufficient.

It is well-established in this Circuit that, "[b]ecause in [42 U.S.C.] § 1983 actions, named defendants often include a governmental entity and numerous state actors, 'it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims

against him or her, as distinguished from collective allegations against the state." *Gray v. University of Colo. Hosp. Auth.*, 672 F.3d 909, 921-22, n.9 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)) (emphasis in original). "To provide adequate notice as to the nature of multiple claims against multiple defendants, a complaint must isolate the allegedly unlawful acts of 'each defendant.'" *Id.*

Here, plaintiff's pleading generally provides sufficient facts to support a plausible claim that his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by one or more sheriff's deputies, who allegedly denied him medical care while he was in the county jail.[1] However, he has not alleged any specific actions by the individual defendants in participating in the constitutional violations. Rather, the only specific allegations against the individual defendants are found in the jurisdictional section of his Amended Petition, where plaintiff notes that defendant Ward was the jail administrator and was acting as "the agent, servant, and employee of the Mayes County Sheriff's Office." (Doc. 2-10 at ¶¶ 6-7). Bartlett, Buck, and Brown are alleged to have been deputy sheriffs and detention officers who were also employed by the Mayes County Sheriff's Office. (*Id.* at ¶¶ 8-10; *see also*

---

[1] The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "Under the Fourteenth Amendment due process clause, 'pretrial detainees are ... entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)). A violation of such rights under the Eighth Amendment gives rise to a civil rights claim under 42 U.S.C. § 1983. *See Tafoya*, 516 F.3d at 916; *see also Estelle v. Gamble,* 429 U.S. 97, 103-05 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").

*id.*, ¶ 13). These allegations are insufficient to provide notice to each individual defendant of the plaintiff's allegations against him. *See Robbins*, 519 F.3d at 1250. For example, it is unclear whether plaintiff's claim against Ward is premised solely upon Ward's position as jail administrator or if plaintiff asserts that Ward was directly aware of, and involved in denying medical care for, plaintiff's serious medical needs. Similarly, plaintiff does not specifically allege that Bartlett, Buck, or Brown had direct involvement in dealing with plaintiff and thus knew of and deliberately disregarded his serious medical needs while at the jail or whether plaintiff has merely included all of them as defendants because they were detention officers at the jail during the time of his incarceration. Those are critical distinctions that will impact the determination of whether plaintiff has § 1983 claims against any or all of them.

Accordingly, dismissal is appropriate as to the claims against defendants Ward, Buck, Brown, and Bartlett in their individual capacities. *See id.* at 1250-54. However, the Court agrees with plaintiff that he should be granted leave to amend.

### 2. Former Sheriff Cantey

Defendant Cantey was the sheriff of Mayes County at the time plaintiff was in jail, and plaintiff sued him in his official and individual capacities. In addition to identifying him as the then-sheriff, plaintiff's pleading also alleges that, as sheriff, Cantey was charged with operational supervision of the jail and county jail inmates, and was responsible for establishing polices, practices, and customs of treating county jail inmates with deliberate indifference to their mental and physical needs and failing to provide training and supervision regarding proper medical and mental evaluations of inmates in the county jail. (*See* Doc. 10-2 at ¶ 30). It is also alleged that jail detention officers acted pursuant to those policies in violating plaintiff's civil rights, and that "[s]uch policies were the moving force behind the constitutional violations." (*Id.*).

*Individual Capacity*

Plaintiff's claims against Cantey, in his individual capacity, are premised upon a theory of supervisory liability under § 1983. A supervisor may not be held liable individually under a theory of respondeat superior or be held liable solely based upon the misdeeds of his or her employees; instead, a supervisor "is only liable for his or her *own misconduct*." *Iqbal*, 556 U.S. at 677 (emphasis added); *see also Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citing *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013)). "[M]ere negligence is insufficient to establish supervisory liability." Johnson v. Martin, 195 F.3d 1208, 1219 (10th Cir. 1999). Three elements are required to establish supervisory liability: (1) personal involvement; (2) causation; and (3) state of mind. *Schneider*, 717 F.3d at 767. As with the others sued in their individual capacities, plaintiff has not provided sufficient allegations necessary to state a claim against Cantey in his individual capacity.

Specifically, the Amended Petition does not sufficiently allege that Cantey was personally involved in denying medical care to plaintiff or that Cantey had the sufficient state of mind required to state an individual capacity claim against Cantey. A prison official's or prison doctor's deliberate indifference to an inmate's serious medical needs is defined as something more than negligence; it requires *knowing and disregarding an excessive risk to inmate health or safety*. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), the Supreme Court clarified that deliberate indifference has both objective and subjective components. The objective component is met if the harm suffered is sufficiently serious. *Id.* The subjective component of the deliberate indifference test is met if a prison official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 104-05.

"To prevail on the subjective component, the prisoner must show that the defendant[] knew [he] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). "The official's knowledge of the risk need not be knowledge of a substantial risk to a *particular* inmate, or knowledge of the particular manner in which injury might occur." *Tafoya*, 516 F.3d at 916 (10th Cir. 2008) (emphasis in original); *see Farmer*, 511 U.S. at 843. "It does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk . . . for reasons personal to him or because all prisoners in his situation face such a risk." *Tafoya*, 516 F.3d at 916 (quoting *Farmer*, 511 U.S. at 843). "[A] jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya*, 516 F.3d at 916.

Here, plaintiff has not sufficiently alleged facts satisfying the subjective component. Plaintiff has not set forth any facts to indicate that Cantey had knowledge of plaintiff's serious medical needs and deliberately disregarded them, or that Cantey was aware that inmates like plaintiff were at substantial risk of harm because of a constitutionally infirm condition which was obvious. For example, plaintiff does not allege that Cantey had notice, based upon prior incidents or reports, that jail inmates were denied medical evaluations or care. In short, the Amended Petition does not sufficiently allege facts supporting the state of mind and personal involvement components of a claim against Cantey in his individual capacity, because plaintiff does not identify facts indicating that Cantey knew of and disregarded an excessive risk to the health or safety of plaintiff or all jail inmates situated similarly to plaintiff. *See Farmer*, 511 U.S. at 837; *Tafoya*, 516 F.3d at 916.

Accordingly, Cantey's motion to dismiss the claims against him in his *individual capacity* is **granted**, and those claims are dismissed. Plaintiff will be permitted leave to amend those claims if desired.

*Official Capacity*

A claim against a government actor in his official capacity "is essentially another way of pleading an action against the county or municipality" he represents, and is considered under the standards applicable to 42 U.S.C. § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). To hold a county / municipality liable under § 1983, a plaintiff must demonstrate (1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation (i.e. "that there is a direct causal link between the policy or custom and the injury alleged"). *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

"When an officer deprives a citizen of a constitutional right, municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (quoting *Monell*, 436 U.S. at 690). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482-83 (1986); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988).

The Tenth Circuit has described several types of actions which may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Bryson*, 627 F.3d at 788 (citations omitted).

The allegations of plaintiff's Amended Petition state a claim against the sheriff in his official capacity. Plaintiff has alleged the existence of county policies or customs, by which the plaintiff's constitutional rights were violated, and that the policies or customs were the moving force behind the violation. (Doc. 2-10 at ¶ 30). The policies or customs included a deliberately indifferent failure to provide medical care in response to serious medical needs of jail inmates. While it is unclear at this time which detention officer(s) are alleged to have violated plaintiff's constitutional rights, the Court notes that the allegations, taken as true at this point, sufficiently allege that it was known and reported to one or more detention officers that plaintiff faced a substantial risk of serious harm and that the officer(s) deliberately disregarded such risk. Plaintiff also generally identifies the existence of county policies that were the purported cause of the alleged violation of his constitutional rights. Thus, the general allegations of plaintiff's Amended Petition state a municipal liability / official capacity claim, and the motion to dismiss Cantey, in his *official capacity*, is **denied**.

The Court is aware that Mr. Cantey is no longer the Mayes County sheriff. Pursuant to Fed. R. Civ. P. 25(d), when a public officer who is a party in an official capacity ceases to hold

office, the officer's successor shall be substituted as a party. Mike Reed, the current Mayes County Sheriff, is hereby **substituted** in place of Cantey on the *official capacity* claim against Cantey. The Court Clerk shall note such substitution on the record, and he shall be substituted on the official capacity claim in the case style on future filings.

B.     **Municipal Liability / Board of County Commissioners**

The Board of County Commissioners of Mayes County (BOCC) moves for dismissal, arguing that it is not a proper defendant on plaintiff's § 1983 claim for denial of medical care while in the county jail. In support of its argument, BOCC asserts that it is not directly responsible for jail operations or medical care under Oklahoma law and thus cannot be named as a defendant to plaintiff's § 1983 claim.

With respect to BOCC's argument that it is not a proper party to be sued under § 1983, the law in Oklahoma and this Circuit is in flux. Specifically, there is apparent confusion on the topic as the issue has arisen in multiple cases before this Court, as well as in other courts, and has resulted in a number of inconsistent decisions. The most relevant case law is discussed below.

Official capacity claims are considered to be claims for municipal liability, are one and the same as suing the municipal entity or county, and the standards applied to municipal liability are thus applied to official capacity suits against officials. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316, n.2 (10th Cir. 1998) ("'[A section 1983] suit against a municipality and a suit against a municipal officer acting in his or her official capacity are the same.' Thus, this opinion refers to the suit against the [board of county commissioners] and the suit against Sheriff Sharp in his official capacity both as the 'suit against the County.'"); *Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) ("[Plaintiff]'s suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County, [Oklahoma].");  *Meadows v. Whetsel*, 245 Fed. Appx. 860, 862

(10th Cir. 2007) (unpublished) ("To state a claim against the Board [of County Commissioners] or against Sheriff Whetsel in his official capacity, [plaintiff] must allege his injuries were the result of a policy or custom."). In *Graham*, the Supreme Court also held that "[t]here is no longer a need to bring official-capacity actions against local government officials [because] local government units can be sued directly." 473 U.S. at 167, n.14.

Under Oklahoma law, claims against a county must be brought by naming the board of county commissioners of that county. *See Okla. Stat.* tit. 19, § 4 ("In all suits ... against a county, the name in which a county shall sue or be sued shall be, 'Board of County Commissioners of the County of ___.'"). Oklahoma law further establishes that a county sheriff is the final policymaker with respect to the county jail. *See Okla. Stat.* tit. 19, § 513. In the § 1983 context, the county may be sued for the policies and official actions of the sheriff. *See Lopez*, 172 F.3d at 763 ("the county may be liable on the basis that Sheriff LeMaster is a final policymaker with regard to its jail, such that his actions 'may fairly be said to be those of the municipality.'")

It would appear from these authorities that the County (sued in the name of the BOCC) is a proper defendant for municipal liability purposes. *See Graham*, 473 U.S. at 165-66; *Myers*, 151 F.3d at 1316, n.2. Yet, BOCC relies principally upon *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988) for the proposition that the plaintiff may not maintain an action under § 1983 against BOCC because the sheriff, not the BOCC, is responsible for jail operations. (Doc. 7 at 2). This Court's reading of *Meade* does not support BOCC's argument because the facts in *Meade* are different than those presented here. In *Meade*, the plaintiff *did not name the board of county commissioners*, but named three *individual Oklahoma County Commissioners* as defendants. 841 F.2d at 1517. The plaintiff sought to hold the sheriff and those commissioners liable in their *individual capacities* under a theory of supervisory liability. *Id.* at 1527-28. In

11

analyzing those claims, the Tenth Circuit held that, while the sheriff could be held individually liable in his supervisory capacity on the evidence presented, the *commissioners* could not be held liable for the deputies' alleged use of excessive force, because the board of county commissioners had no duty under Oklahoma law to hire, train, supervise, or discipline the county sheriffs or their deputies. *Id.* In short, because the *commissioners* acting on the board had no responsibility for supervising and training deputies in the use of force, the commissioners could not be held liable individually under a supervisor liability theory. *See id.*

While *Meade* would generally preclude a plaintiff from suing commissioners in their *individual* capacities for actions of sheriff's deputies, the court's holding in that case does *not* preclude a plaintiff from bringing a § 1983 *municipal liability* action against a *county*. This reading of *Meade* is plain on its face and is consistent with the numerous Supreme Court and Tenth Circuit decisions that treat § 1983 *official* capacity claims and claims against a county, in the name of its board of county commissioners, as suits against the county. *See id.* at 1527-29; *Graham*, 473 U.S. at 165-66; *Myers*, 151 F.3d at 1316, n.2; *Lopez*, 172 F.3d at 762. Both types of suits are analyzed under the *Monell* framework, which requires the existence of a county policy that was the moving force behind a violation of federal rights. *See id.; Graham*, 473 U.S. at 165-66.

The Court acknowledges that some state and federal decisions in Oklahoma have indicated that a board of county commissioners is not a proper defendant with respect to allegations against a county sheriff on civil rights claims arising out of incidents at a county jail. *See, e.g., Estate of Crowell ex rel. Boen v. Bd. of County Comm'rs of County of Cleveland*, 237 P.3d 134, 142 (Okla. 2010) (citing *Meade* for the proposition that "the board of county commissioners is not liable under 42 U.S.C. § 1983 because the board has no statutory duty to

hire, train, supervise, or discipline county sheriffs or deputies."); *duBois v. Payne County Bd. of County Comm'rs*, 543 Fed. Appx. 841 (10th Cir. 2013) (unpublished) (agreeing with district court's reasoning that board of county commissioners was not a proper party to a § 1983 claim; district court's order cited *Meade* and *Estate of Crowell* for the proposition that a county is not liable as a matter of law for policy decisions for which sheriff is responsible); *Arnold v. Smallwood*, No. 10-CV-070-GKF, 2012 WL 1657045 (N.D. Okla. May 10, 2012) ("Because the Board of County Commissioners has no statutory duty with respect to the management of the jail, it cannot be held liable for the jailer's alleged use of excessive force."). These cases rely in part upon *Meade* which, as noted, involved a suit against individual commissioners, as opposed to claims against a *county*, sued in the name of the board.

In addition, the Court does not believe the foregoing authorities -- which rely in part upon *Estate of Crowell* and an extension of *Meade* that appears inconsistent with its actual holding -- can be reconciled with other decisions of the Tenth Circuit and the Supreme Court, which plainly establish that a policy of a county sheriff in his final policymaking capacity *is a county policy*, such that a county may be sued under § 1983 so long as such policy was the moving force behind a constitutional violation. As the Tenth Circuit explained in *Myers*:

> It is true that "municipal liability under § 1983 attaches where ... a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *id.* at 481, 106 S.Ct. 1292 ("If the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.").
>
> The defendants do not deny that Sheriff Sharp, as the supervising law enforcement officer, was a final policymaker with respect to the decision to enter the apartment. *See id.* at 483 n. 12, 106 S.Ct. 1292 (offering sheriffs as examples of official policymakers with respect to law enforcement activities). Thus, there is no dispute in this case that the County, through Sheriff Sharp, was the "moving

13

force" behind the decision to enter the apartment. If that decision—the decision to enter the apartment—resulted in a constitutional violation, the County would be liable.

*Myers*, 151 F.3d at 1319.

Similarly, in *Lopez*, the Tenth Circuit held that a sheriff's failure to provide adequate jail staffing and monitoring of jail inmates would constitute a policy attributable to the county:

> [T]he county may be liable on the basis that Sheriff LeMaster is a final policymaker with regard to its jail, such that his actions "may fairly be said to be those of the municipality." *See [Board of County Comm'rs of Bryan County, Oklahoma v.] Brown*, 520 U.S. [397, 402 (1997)]. Under Oklahoma law, a county sheriff is in charge of the jail and the prisoners therein. *See Okla. Stat.* tit. 19, § 513; tit. 57, § 47.

172 F.3d at 763.

Because a sheriff's official policy is county policy and a "county" is sued in the name of its board of county commissioners, *see Okla. Stat.* tit. 19, § 4, the Court concludes that the BOCC is a proper party defendant in this case. This conclusion finds further support in other recent federal decisions. For example, in *Layton v. Board of County Comm'rs of Okla. County*, 512 Fed. Appx. 861 (10th Cir. Mar. 12, 2013) (unpublished), the Tenth Circuit reversed the trial court's grant of summary judgment to the Board of County Commissioners, which the circuit court defined as "the 'County,'" reasoning in part as follows:

> The County may also "be liable on the basis that [Sheriff Whetsel] is a final policymaker with regard to its jail, such that his actions 'may fairly be said to be those of the municipality.'"

*Id.* at 871-72. In *Layton*, the Tenth Circuit cited *Winton v. Bd. of County Comm'rs of Tulsa County*, 88 F. Supp. 2d 1247, 1270 (N.D. Okla. 2000) in support of its decision. In *Winton*, the court rejected arguments made by the Board of County Commissioners of Tulsa County (which is defined as "the County"), which arguments were similar to those asserted by BOCC here:

14

> The County argues there is no evidence of causation. That is, the County argues that there is no evidence that any of its own customs or policies were the moving force behind the denial of timely medical care to [a county jail inmate]. The Court does not agree. First, the County is potentially liable on Plaintiffs' medical care claim for essentially the same reasons the Sheriff is potentially liable on Plaintiffs' medical care claim. The Sheriff's actions or inactions, as the final policy maker for the Jail, are attributable to the County. Thus, the inadequate tour watch policy established or acquiesced in by the Sheriff is the County's policy as well.

*Winton*, 88 F. Supp. 2d at 1270.

Additionally, in *Dungee v. Bd. of County Comm'rs of the County of Oklahoma*, No. CIV-14-232-D, 2014 WL 1878762 (W.D. Okla. May 12, 2014), the court denied the board of county commissioners' argument that it was not a proper party to the § 1983 claim:

> In Oklahoma, a suit against a county must be brought by naming the board of county commissioners of that county. Under federal law, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Thus, bringing "a claim against [a sheriff] in his official capacity ... is the same as bringing a suit against the county." ... Whether a particular official has final policymaking authority for purposes of § 1983 is a question of state law. Under Oklahoma law, a county sheriff is the final policymaker with regard to the county's jail..., and the county (by suit against the board of county commissioners) may be liable for the sheriff's actions as final policymaker with regard to the jail.

*Id.* at *2-3 (internal citations omitted). In *Pruett v. Board of County Comm'rs of Cleveland County, Oklahoma*, No. CIV-12-0947-HE, 2013 WL 628691 (W.D. Okla. Feb. 20, 2013), the court concluded that the plaintiff had stated a claim against the county and thus denied motions to dismiss by the board of county commissioners and the sheriff in his official capacity, stating:

> It is important to recognize who the Board of County Commissioners and the sheriff (in his official capacity) are. They are, in substance, Cleveland County. Under Oklahoma law, the county is sued by naming the Board of County Commissioners as a defendant. 19 *Okla. Stat.* § 4. Further, an official capacity suit against the sheriff is, in substance, an action against the county.

*Id.* at *2.

Plaintiff alleges the existence of a Mayes County policy, custom, or practice, implemented by the sheriff, which was the moving force behind a violation of his constitutional rights. While the Court acknowledges the existence of case law to the contrary (*see, e.g., Estate of Crowell*, *duBois*, and *Arnold*, discussed *supra*), finding BOCC to be a proper defendant to this proceeding appears to the Court to be more consistent with *Graham*, *Myers*, *Lopez*, and the Oklahoma statutory scheme, which requires that a county be sued in the name of its board of county commissioners. Plaintiff has not sued the individual commissioners, as was the case in *Meade*, but instead sued the County, in the name of the BOCC. Accordingly, the Court concludes at this time that Mayes County, sued in the name of the Board of County Commissioners, is a proper party to plaintiff's claim of municipal liability. The BOCC's motion to dismiss, which was premised solely upon its argument that it is not a proper party, is thus **denied**.

### C. Defendants Goodman and Garcia

Defendants Goodman and Garcia have not entered appearances in this matter, and the Court cannot determine whether they were timely served, as no returns have been filed in this Court. By **October 10, 2014**, the plaintiff shall show that proper, timely service was made upon Goodman and Garcia. In the alternative, plaintiff shall show good cause for any failure to timely serve them, or the claims against those defendants will be dismissed.

## IV. Conclusion

The BOCC's dismissal motion (Doc. 7) is **denied**. Bartlett's motion to dismiss (Doc. 25) is **granted**.

The dismissal motion of defendants Cantey, Ward, Brown, and Buck (Doc. 22) is **granted in part and denied in part**. The motion is granted with respect to the claims against

Ward, Brown, and Buck and the individual capacity claim against Cantey, and those claims are hereby dismissed. The motion is denied with respect to the official capacity claim against Cantey, but Sheriff Mike Reed shall be substituted as the defendant on that official capacity claim.

By **October 10, 2014**, plaintiff may amend his pleading in an attempt to cure the deficiencies noted herein. By that same date, plaintiff must show timely service upon Goodman and Garcia or good cause for the failure to timely serve them, or those defendants will be dismissed from the action.

SO ORDERED this 29th day of September, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE