# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GERALDINE DUBOIS, Guardian of the Person and Estate of Gregory Steven DuBois, <br><br> Plaintiff, <br><br> v. <br><br> THE BOARD OF COUNTY COMMISSIONERS OF MAYES COUNTY, OKLAHOMA; FRANK CANTEY; CHUCK WARD; JEFFERY BARTLETT; S. BROWN; MITCH GOODMAN; EMILY GARCIA; MIKE REED; <br><br> Defendants. | Case No. 12-CV-677-JED-PJC |

## OPINION AND ORDER

Before the Court are defendants' motions to exclude plaintiff's experts, Jeff Eiser and Richard Hastings, D.O. (Doc. 135, 136).

### I.  Standards Governing Expert Testimony

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the [expert] has applied the principles and methods reliably to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court suggested factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique

has achieved general acceptance in the relevant scientific or expert community." *Baines*, 573 F.3d at 985 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* inquiry is "flexible," and the district court does not need to consider every *Daubert* factor. *Id.* at 989–90; *see also Bitler v. A.O. Smith. Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) ("[T]his list is neither definitive nor exhaustive and . . . a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee note. The court should make a preliminary finding whether the expert is qualified, by determining "if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'" *Bitler*, 400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592). The proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a relevant factual basis. *See id.* at 1233. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id.* However, an impermissible analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert*. *See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).

**II.    Jeff Eiser**

Plaintiff has identified Jeff Eiser as a jail policy and procedures expert. In his expert report, Eiser offers a number of opinions regarding the manner in which the Mayes County Jail (Jail) handled Mr. Dubois' incarceration and medical complaints. (*See* Doc. 135-1). Defendants

2

move to preclude Eiser from testifying as an expert, based on defendants' argument that he is not qualified to render expert testimony on jail standards. If he is found to be qualified as an expert, the defendants request that the Court preclude Eiser from providing three specific opinions at any trial of this matter.[1]

### A. Eiser's Qualifications and Experience

Defendants first contend that Eiser does not have the requisite qualifications and experience to render any expert opinion in this case. Specifically, they assert that Eiser has been inactive in his field since 2009, and that certain of his certifications are out of date.

Eiser's expert report details his qualifications and experience, which are extensive in the corrections industry, and he indicates that he has experience writing policy handbooks for jail administrators and significant experience with training, jail staffing, and standards. (Doc. 135-1 at ¶¶ 3-5). Eiser began work in the corrections industry in 1980 and spent the significant portion of his career as a Deputy Director of Corrections, which he describes as "basically jail administrator." (Doc. 135-2 at 15, ln. 4-12). Although Eiser retired in 2009, the policies and procedures he analyzed in conjunction with this case were in place during Eiser's tenure as Deputy Director of Corrections. Eiser worked in some correctional capacity for 29 years, his entire law enforcement career. The last nine years of his career focused on security, intake functions, and the daily operations of the Hamilton County (Cincinnati) correctional facilities. (*Id.* at 15, ln. 21-25, at 16, ln. 1-7). Prior to that, Eiser supervised and implemented training for

---

[1] The Court has not yet ruled on several pending summary judgment motions. To the extent that some but not all claims survive summary judgment to proceed to trial, only expert opinions that are relevant to surviving claims will be allowed. As such, this order is without prejudice to further consideration of the relevance of the plaintiff's experts' opinions to claims that remain following a ruling on summary judgment motions.

correctional officers, correctional supervisors, and other administrative persons. (*Id.* at 17, ln. 19-25). Eiser is an adjunct instructor in criminal justice.

The Court declines to exclude Eiser as an expert in this case. Eiser is qualified to render testimony as it relates to the field of jail operations and correctional staffing, policies, procedures, and standards. The defendants' concerns do not undermine his overall expertise and experience in the industry, and defendants do not adequately explain how any standards applicable to this case have changed in the time since he retired in 2009. Moreover, the defendants can cross examine Eiser to point out to the jury any alleged deficiencies in his knowledge on particular subjects on which he opines.

### B.     Investigation regarding Mr. Dubois

The first Eiser opinion challenged by the defendants involves Eiser's conclusion that Frank Cantey, who was the Sheriff at the time, and Chuck Ward, the Jail Administrator, failed to conduct an extensive internal review of Dubois' incarceration after he was taken to the hospital and lost a limb. (Doc. 135-1 at 16-17). According to Eiser, their failure to do so exhibits a "culture of indifference." (*Id.* at 16). Eiser asserts that "an effective and comprehensive administrative review confirms for the jail staff that they will be held responsible for their actions and it creates a 'culture of accountability' for all levels of command." (*Id.*). Eiser then concludes that the Jail's failure to conduct a review exhibits jailers' "indifference to the most basic responsibilities for a jail; to ensure the safety of inmates and their access to adequate medical care, assessment and treatment." (*Id.*).

A trial court must ensure "that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert¸* 509 U.S. at 597). The Court agrees with the defendants that Eiser's opinion

4

regarding a failure to investigate or conduct an internal review *after Mr. Dubois was injured* does not have any relevance to any material issue to be tried in this case.  In order to be found liable for alleged violations of Mr. Dubois' rights under the Eight Amendment, plaintiff must prove – depending on which class of defendant is at issue – that a policy or custom was the moving force behind Mr. Dubois' constitutional injury or that an individual defendant was deliberately indifferent to a serious medical need, proximately causing his injuries.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  Eiser's opinion regarding the failure to conduct a post-incident review is temporally defective in a manner that renders that opinion irrelevant.  In short, there is obviously no causal link between Mr. Dubois' injuries and an alleged failure of the Jail to do something after the injury occurred. Mr. Dubois' leg was amputated before the allegedly deficient failure to conduct a review, thus the defective review could not have caused his injury.

Even were Eiser's opinion relevant, his methodology is overly general on the issue of the internal review.  Eiser links the alleged failure to conduct an administrative review to the American Correctional Association (ACA) Standard 7D which requires that "the facility is administered efficiently and responsibility."  Although the Court is not at this time prohibiting Eiser from referencing other specific portions of the ACA when tendering an opinion, standard 7D of the ACA is an unhelpful and overly generalized "catch all" provision that could be applied to virtually any purported deficiency in any facility in the United States. Due to the irrelevant nature of the opinion and the superficial analysis that accompanies it, any testimony regarding an internal review is excluded.

Eiser will be precluded from testifying as to his opinion regarding any internal review that he feels should have been conducted after Mr. Dubois was injured, and defendants' motion is **granted** as to that issue.

### C.  Failure of Jail Staff to Call for a Medical Evaluation

Defendants next complain that Eiser inaccurately indicates that Jail staff, who receive only basic CPR and first aid training, are not medically trained.  The gravamen of Eiser's opinion on that point is that Jail staff did not ensure that Mr. Dubois received proper medical care as is necessary for inmate health and safety.  For instance, Eiser opines that, on both May 17 and July 15, jailers should have ensured that Mr. Dubois received treatment from a medical professional rather than relying on their own judgment as laypeople.  In rendering that opinion, Eiser references the Oklahoma Jail Standards and the National Commission on Correctional Health Care (NCCHC), which require facilities to grant inmates access to care.  Principally, Eiser argues that inmates should have been examined by Jan Wells, the nurse practitioner, who was the only person who had the authority to give a "professional clinical judgment" as required by the standards, but during relevant periods Dubois was not seen by any medical professional at all.

In contrast to Eiser's first opinion, the cited standards do provide a sufficient basis for establishing that Eiser relied on a methodology rather than merely a "subjective belief or [an] unsupported speculation," *Daubert*, 509 U.S. at 590.  Eiser's opinion is also relevant in the context of an alleged Eighth Amendment violation.  To the extent that defendants argue that Eiser misstates evidence regarding the medical qualifications of Jail staff, those points can be explored on cross-examination.  That is, to the extent that he describes any factual background in a manner that is overstated, the defendants can point out what they reference in their motion – that staff had CPR and first aid training in accordance with the Oklahoma Jail Standards.

Defendants' motion to exclude the expert testimony as it relates to Eiser's opinion on this point is **denied**.

### D.   Policy or Custom of Denying Medical Care through Deliberate Indifference

Defendants' last *Daubert* argument challenges Eiser's opinion that defendants Ward and Cantey established a "pattern, custom, or practice of ignoring known risks and exhibiting deliberate indifference to the safety, health, and medical needs" of the plaintiff. (*See* Doc. 135-1 at 19). Defendants also contend that Eiser should not be permitted to testify as to his opinion that defendants had a policy or custom of denying medical care. The Court agrees. Such testimony will not assist the jury in determining any fact issue. The factual record will be the necessary evidence upon which the jury must determine whether such a policy or custom existed, in light of the instructions on the law which the Court will provide. The jury will not need an expert to tell them how to apply the law to the factual evidence they hear on that point.

In addition, the Court has ruled in previous cases, as to this particular expert, that it is improper for an expert to opine that a jail's actions or inactions constitute "deliberate indifference," as Eiser wishes to opine in this case. *See Poore v. Glanz*, No. 11-CV-797-JED, 2014 WL 4263225 at *4-5 (N.D. Okla. Aug. 29, 2014); *Henderson v. Glanz*, No. 12-CV-68-JED, 2014 WL 2761206 at *4 (N.D. Okla. Jun. 18, 2014).

In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), the Tenth Circuit concluded that an expert should not be permitted to give an opinion on an ultimate issue of law. 853 F.2d at 807-09. In arriving at that conclusion, the court noted that "a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law," and stated:

> The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding

> and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. . . . By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence. . . . In no instance can a witness be permitted to define the law of the case.

853 F.2d at 808-10.

Under the foregoing standards, Eiser's opinions that defendants' actions or inactions exhibited a pattern or practice of "deliberate indifference" will be excluded. The Court will instruct the jury on the meaning of deliberate indifference in the context of plaintiff's claims under 42 U.S.C. § 1983, and it is thus inappropriate for Eiser to specifically opine on whether he believes deliberate indifference is present in this case. Eiser's opinion on this point would not be helpful to a jury without any explanation of the context of that legal term of art, as to which Eiser does not have any particular expertise. That opinion will be excluded and defendants' motion is **granted** to that extent.

### III.  Richard Hastings, D.O.

Defendants request that the Court prohibit Richard Hastings, D.O. (Dr. Hastings) from offering expert testimony at any trial. They do so based upon his alleged lack of qualifications in the relevant fields of medicine. Defendants also move to exclude various portions of his opinion on prejudicial grounds.

#### A.  Qualifications

Defendants emphasize that Dr. Hastings has not had an active role in a hospital setting in over twenty (20) years, he office shares with a variety of different attorneys who use his service, and he has no specialties which would aid him in reaching an opinion in this case. Specifically,

8

defendants argue that, because he has no certifications in "surgery, oncology, emergency medicine, or gastroenterology," he should be precluded from testifying regarding the medical issues in this case. (*See* Doc. 136 at 4).

Dr. Hastings received his D.O. from Oklahoma State University and completed a four year residency in internal medicine in 1984. He has a board certification in Internal Medicine. (*See* Doc. 126-2 at 17, ln. 7-10). Dr. Hastings' principal purpose for testifying is to offer an opinion on causation – that the Jail's delay in obtaining medical care for Mr. Dubois caused Mr. Dubois' leg to be amputated and that amputation would not have been necessary had he received timely treatment on the bowel issue. Based upon his medical degree and many years of experience in internal medicine, the Court is unwilling to find that Dr. Hastings lacks sufficient qualifications to testify at all in this matter.

To the extent that Dr. Hastings office shares or principally offers testimony favorable to lawyers for plaintiffs, as defendants argue, those points do not automatically disqualify him from offering medical opinions. Those issues do go to bias, and effective cross-examination relating to bias will be permitted and will address many of defendants' concerns about Dr. Hastings' qualifications.

### B.     Challenged Opinions

With respect to particular opinions, defendants first contend that Dr. Hastings should not be permitted to provide an opinion regarding legal constitutional standards, and his repeated references to negligence (*see* Doc. 137-1) will confuse the issues for the jury in violation of Fed. R. of Evid. 403. The Court agrees. Negligence alone is insufficient to establish a violation of the Eight Amendment, and informing the jury of his opinion that the Jail was "negligent" will be unhelpful and potentially confusing. To that extent, the defendants' motion to exclude his

testimony is **granted**.  However, the Court notes that the principal issue upon which Dr. Hastings opines – causation – is an appropriate topic for expert testimony in this case, and Dr. Hastings will be permitted to testify as to his opinion that Mr. Dubois would not have lost his leg if he had received timely medical treatment, and Dr. Hastings will be permitted to explain the grounds for that opinion.

Defendants also contend that Dr. Hastings' use of the term "gastrointestinal adverse symptom complex" should be excluded because it is a term he made up to describe plaintiff's condition and that term is not scientifically supported. (*See* Doc. 136, Exhibit 2, p. 22, ln. 13-24). The Court agrees that use of that term may mislead or confuse the jury by suggesting that there is such a complex or diagnosis when it appears that it is not supported in the medical field.  Dr. Hastings will be permitted to discuss in detail Mr. Dubious' condition and symptoms to the extent his opinions are premised thereon, but he will not be permitted to describe it as a complex that has no medical support.  Defendants' motion to exclude the use of the term "gastrointestinal adverse symptom complex" is **granted**.

Defendants' last contention is that Dr. Hastings should be precluded from making use of the Oklahoma Jail Standards or other jail operating procedures because he is not an expert in those fields. The Court agrees, and cautions that his opinions should be limited to Mr. Dubois' medical condition and the causation issue referenced above.

**IV.   Conclusion**

Defendants' motions to exclude plaintiff's experts (Doc. 135, 136) are **granted in part and denied in part**, as set forth above.

SO ORDERED this 9th day of March, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

10